**LAW OFFICES OF JERRY L. STEERING**
Jerry L. Steering (SBN 122509)
Brenton Whitney Aitken Hands (SBN 308601)
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerry@steeringlaw.com ; jerrysteering@yahoo.com
brentonaitken@gmail.com

Attorney for plaintiff Leo Kenneth Davis, as guardian ad litem for his minor child E.J.D.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO KENNETH DAVIS, as guardian ad litem for his minor child E.J.D. | Case No.: 2:24-cv-06547-CBM-MAR |
| Plaintiff, | **DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.** |
| vs. | |
| CITY OF MANHATTAN BEACH, KEN Y. CHENG and DOES 1 through 10, inclusive, | **DATE:        AUGUST 26, 2025** |
| Defendants. | **TIME:        10:00 A.M.** |
| | **CTRM:        8D** |
| | **UNITED STATES DISTRICT JUDGE CONSUELO B. MARSHALL** |

I, Jerry L. Steering, do hereby declare that the facts set forth herein are based upon my personal knowledge and upon information and belief, and if called upon to testify I could do so competently:

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

1

**California Rule Of Court 7.955(b): Factors The Court May Consider In Determining A Reasonable Attorney's Fee.**

1.      I am an attorney, duly licensed to practice law in all of the California state courts, in all state courts in the State of Georgia, and in the United States District Court for the Central District of California, as well being licensed to practice law before the United States District Court for the Southern  District of California, the United States District Court for the Eastern District of California, the Ninth Circuit Court of Appeals, the United States District Court for the Northern District of Georgia, the United States District Court for the Middle District of Georgia, the Eleventh Circuit Court of Appeals and the United States Supreme Court.

2.      I have been a lawyer since 1984 and have been suing in federal court since 1984 and have been suing police officers for constitutional torts (i.e. 42 U.S.C. § 1983) since 1986[1], as well as for other state laws claims against the police. I specialize in that area of law.

3.      I am counsel of record for plaintiff Leo Kenneth Davis, as guardian ad litem for his minor son E.J.D.

_____

[1] My first Section 1983 trial was before this Honorable Court, United States District Judge Consuelo B. Marshall against the City of Laguna Beach, where I obtained a plaintiff's verdict for Monell liability against the City of Laguna Beach for a mace case.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

2

**California Rule Of Court 7.955(b)(1). The Fact That A Minor Or Person With A Disability Is Involved And The Circumstances Of That Minor Or Person With A Disability.**

4.  I make this instant declaration in support of this instant Motion For Approval of Compromise of Claims of Minor Plaintiff E.J.D., whose date of birth is December 7, 2007.

**California Rule Of Court 7.955(b)(6). The nature and length of the professional relationship between the attorney and the representative of the minor or person with a disability.**

5.  I was retained to represent E.J.D. in this action on May 12, 2023 by his father and his guardian ad litem in this action, Leo Kenneth Davis via a Contingency Fee Agreement, that provides for 40% of the total recovery in this action plus my costs.

6.     However, as this is a Minor's Compromise case, I am only seeking 25% of the total recovery in this case plus my costs. In addition, I have not and will not receive any compensation in this case for my services other than those requested pursuant to that contingency fee agreement.

7.     I did not know either Leo Kenneth Davis or minor plaintiff E.J.D., or have any sort of relationship with minor plaintiff E.J.D.'s father, plaintiff/guardian ad litem Leo Kenneth Davis, prior to his retaining me to represent his son, E.J.D. in this action. In addition, I have not and will not receive any compensation in this case for my services other than those requested pursuant to that contingency fee

agreement.

8.    This Motion is based on the ground that the parties to this action have reached a settlement of all claims by minor plaintiff E.J.D. against the defendants City of Manhattan Beach and Manhattan Beach Police Department police officer Ken Y. Cheng.

**California Rule Of Court 7.955(b)(3). The novelty and difficulty of the questions involved and the skill required to perform the legal services properly.**

9.    Defendants City of Manhattan Beach and Manhattan Beach Police Department police officer Ken Y. Cheng are represented by Steven J. Rothans and Esther Teixeira of CARPENTER, ROTHANS & DUMONT LLP, 500 South Grand Avenue, 19th Floor, Los Angeles, CA 90071.

10.    Defendants and their counsel are in agreement with minor plaintiff E.J.D.'s instant Motion for Approval of Compromise of Claims of Minor Plaintiff E.J.D. approval of the minor's compromise and do not intend to oppose the same.

11.    In a nutshell, plaintiff's allegations in this case against defendants City of Manhattan Beach and Manhattan Beach Police Department police officer Ken Y. Cheng are that on April 23, 2023, shortly after 2:00 p.m., plaintiff E.J.D., then a 15-year-old boy, was riding his e-bike traveling southbound on Pacific Avenue between 14th Street and Manhattan Beach Boulevard in the City of Manhattan Beach, California.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

4

12.     At that time, a Manhattan Beach Police Department patrol car was traveling northbound at the 1300 block of Pacific Avenue in Manhattan Beach, California.

11.     In that patrol car were Manhattan Beach Police Department police department police officers Cole J. Barba and Seth C. Hartnell (hereinafter, "officers Barba and Hartnell"), who spotted plaintiff E.J.D. riding his e-bike southbound on Pacific Avenue in Manhattan Beach, California.

12.     At that time, unbeknownst to plaintiff E.J.D. it was later discovered that Officers Barba and Hartnell were scouring the area looking for a rider of an e-bike who fled the scene of an incident involving several juveniles pursuant to an investigation of two assaults.

13.     According to the Manhattan Beach Police Department, two minors sustained head trauma from being hit in their heads with skateboards at the parking structure at Metlox Plaza, located near the vicinity of 1201 Morningside Avenue in the City of Manhattan Beach, California.

14.     Minor plaintiff E.J.D. was not a suspect in that assault with skateboard investigation but was suspected of being a witness to those alleged assaults.

15.     Officers Barba and Hartnell then turned around their patrol vehicle and followed plaintiff E.J.D. eastbound on Manhattan Beach Boulevard.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

16.     At some point in following plaintiff E.J.D., Manhattan Beach Officers Barba and Hartnell activated the red and blue lights and siren on their patrol car in an attempt to perform a traffic stop of minor plaintiff E.J.D.

17.     Thereafter, plaintiff E.J.D. became scared, wanted to go home and did not stop for Officers Barba and Hartnell.

18.     Throughout the course of the pursuit, minor plaintiff E.J.D. then led Officers Barba and Hartnell (and thereafter other Manhattan Beach police officers) through the streets of Manhattan Beach, Hermosa Beach, Redondo Beach and Torrance, California.

19.     During the pursuit, Hermosa Beach Police Department police officer Matthew Rushton ("Officer Rushton") pulled his patrol car into the path of minor plaintiff E.J.D., but E.J.D. maneuvered his e-bike around Officer Rushton.

20.     Also, during the pursuit, Manhattan Beach Police Department police officer Chad E. Swanson ("Officer Swanson") approached minor plaintiff E.J.D. on his police motorcycle and told him to pull over and stop.

21.     Thereafter, minor plaintiff E.J.D. failed to stop and headed southbound on Anza Avenue in the City of Torrance, when defendant Manhattan Beach Police Department Sgt. Ken Y. Cheng tried to literally run him off the road several times with his patrol car, using an Immobilization Technique" ("PIT" maneuver or tactical vehicle intervention) by intentionally colliding with and

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

6

striking plaintiff E.J.D.'s e-bike with his patrol car.

22.     Defendant Ken Y. Cheng drove his patrol car into minor plaintiff E.J.D.'s e-bike, propelling E.J.D. into some hedges on the side of the road at the 19500 block of Anza Avenue in the City of Torrance, California.

23.     Thereafter, minor plaintiff E.J.D. was transported by the Torrance Fire Department by ambulance to the emergency room at Harbor-UCLA Medical Center in Torrance, California for treatment for his injuries.

24.     Although minor plaintiff E.J.D. suffered some minor abrasions to his head, shoulder, chest and abdomen from landing in the hedges next to the roadway, causing pain and bruising to his left knee, pain to his head, neck, and pain to his testicular region, he suffered no broken bones and he required no further medical care or treatment other than his initial hospital visit on the day of the April 23, 2023 incident complained of in this case.

25.     Notwithstanding what appears to have been obvious wrongful conduct by Manhattan Beach Police Department Sgt. Ken Y. Chang, this case nonetheless it required a great deal of skill to prosecute this case, especially in light of the type of cases that the Ninth Circuit Court of Appeals is awarding qualified immunity on.

26.     The fact that the wrongfulness of police actions or orders would seem to be apparent from a commonsense perspective does not mean that the offending

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

police officer will not be awarded qualified immunity from suit.

27.     Moreover, as shown below, in light of the de minimis injuries suffered by minor plaintiff E.J.D. in this case, I believe that it took a great deal of experience in prosecuting police misconduct civil rights cases in federal court to achieve this proposed $395,000.00 settlement of this action.

**California Rule Of Court 7.955(b)(4). The amount involved and the results obtained.**

28.     Through the Mediation of this case, plaintiff E.J.D. and his father and guardian ad litem, Evan Davis, have agreed to settle with defendant City of Manhattan Beach and Ken Y. Cheng for a total amount of $395,000.00; an amount that after the payment of the Attorney's Fees and Costs in this case will still pay minor plaintiff E.J.D. $424,437.52 pursuant to the annuity payments shown below.

29.     I believe that this amount is sufficient compensation for the nature of the de minimis damages incurred by minor plaintiff E.J.D. (i.e. basically no special damages) from the actions of defendant City of Manhattan Beach and Ken Y. Cheng.

**California Rule Of Court 7.955(b)(7). The experience, reputation, and ability of the attorney or attorneys performing the legal services.**

30.     I specialize in representing plaintiffs in federal civil rights actions against police officers and law enforcement agencies.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

31.     I graduated with a Bachelor of Science Degree with a Major in Biology and a Minor in Chemistry from the State University of New York at Brockport in 1977.

32.     I graduated from the University of Georgia School of Law in 1984.

33.     I also have co-authored one Law Review article; this one about Federal Rules of Evidence 804(b)(3); "accomplice accusations" as declarations against penal interest, and their disparate treatment under Fourth Amendment and Sixth Amendment scrutiny. *"Accomplice Accusations in the Criminal Process: The Application of Sixth Amendment Tests for the Reliability of Hearsay Evidence to Probable Cause Determinations."* 16 Rutgers L.J. 869 (1984-1985.)

34.     After I graduated law school in 1984, I worked as an Associate Attorney for the law firm of Scott & Quarterman in Athens, Georgia, from June of 1984 through June of 1986. In Georgia, if one attended an ABA accredited law school, one was allowed to sit for the Georgia Bar Examination in their last semester of law school.

35.     I took the Georgia Bar Examination in February of 1984, and I graduated from the University of Georgia School of Law in May of 1984. I passed the February 1984 Georgia Bar Examination, and I was admitted to practice law when I got my Bar Exam results on June 25, 1984. Scott & Quarterman was a small four-lawyer law firm, and as we ;were located in a small-town college town,

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

Athens, Georgia. I practiced almost every area of law; personal injury, criminal law, probate law, divorce law, social security disability law, worker's compensation law, real estate law, civil rights law, medical malpractice law, and just about everything else.

36.     When I was in law school, my boss, Howard Tate Scott, had essentially inherited his law practice from his father; Guy B. Scott, Jr.

37.     Accordingly, when I was in law school, I "ghost wrote" probably twenty appeals to the Georgia Court of Appeals, and by the time that I graduated law school, I had already won four appeals with that court (via writing them for my boss, and him signing the same.)

38.     In the slightly 22 months that I practiced law in Georgia (June 1984 through April 1986), I estimate that I had approximately twenty jury trials, including personal injury cases.[2]

39.     Both before and after I moved to California in 1986, I have also represented persons in many personal injury cases, including brain damage and paralysis cases.

_____

[2] I also had tried cases in the United States District Court for the Middle District of Georgia; my last one there being a medical malpractice case, that was a diversity action. I also tried a murder case in Georgia less than six months out of law school; *State v. Katie Mae Wilson*; Clarke County, Georgia, Superior Court. I was able to get her a manslaughter conviction, with a sentence of six months in jail, for beating her husband to death with a boiling pot.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

10

40.     I took and passed the July 1985 California Bar Examination, and in April of 1986, I moved to California and began practicing law here.

41.     I have also been on the Appointed Counsel Panel for the Fourth District Court of Appeal (Appellate Defenders) and have been appointed by the California Fourth District Court of Appeal to represent persons incarcerated in prison for serious felonies, including murder, rape and armed robbery.

42.     I have also represented criminal defendants in murder cases, drug cases, robbery cases, domestic violence cases, investor fraud cases, and even won a murder appeal in the Fourth District Court of Appeal in the case of People v. Mark Edwin Taylor in 1992[3].

43.     In early 1993, I opened up the Law Offices of Melvin M. Belli in Beverly Hills, California. I had a partnership relationship with Melvin Belli in that Beverly Hills Office.

44.     We kept this business relationship until Melvin Belli died in July of 1996.

45.     At the Belli Beverly Hills Office, I represented many persons in personal injury cases, including person's paralyzed from various types of injuries.

46.     After Mr. Belli passed away in July of 1996, in October of 1996, I

_____

[3] *See, People v. Taylor*, 6 Cal.App.4th 1084 (1992).
DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

11

moved my law office back to Orange County, in Newport Beach, California; the same office that I work out of today.

47.    I also have represented at least one hundred criminal defendants in "resistance offense" cases, such as violation of Cal. Penal Code § 148(a)(1) (resisting / obstructing / delaying officer), Cal. Penal Code § 243(b) (battery on peace officer), Cal. Penal Code § 241(c) (assault on peace officer) and Cal. Penal Code § 69 (resisting / obstructing officer with force or violence.)

48.    I have had approximately 75 criminal jury trials, as well as another 30 or so civil trials that don't involve police misconduct.

49.    In 1987 I prosecuted and won (jury verdict) my first police misconduct case; *Laurel Kinder v. City of Laguna Beach. et al*. The case was tried before United States District Judge Consuelo Marshall. The offer on the case was zero; not one dollar. It was a mace spraying in the face case. I won the case, and was awarded $1.00 for compensatory damages, $5,000.00 in punitive damages and $47,500.00 in attorney's fees.

50.    Since that time I have represented persons in approximately 300 police misconduct civil cases. I have also consulted other lawyers and have otherwise been involved in one way or another in approximately another several hundred or so police misconduct cases.

51.    I have also spoken with and advised literally thousands of persons

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

12

who were the victims of police misconduct; thousands.

52.    I believe that I have a widely known reputation in Southern California for being an expert and specialist in police misconduct cases. I have been interviewed for police misconduct cases on national television, including being interviewed by Diane Sawyer on Good Morning America. I also was interviewed by CNN on a piece shown on Anderson Cooper for my litigating the *Thomas Perez v. City of Fontana* case.

53.    Lester Holt and Dateline NBC is also doing a one-hour Special Report about the *Thomas Perez v. City of Fontana* case, with me being interviewed by Lester Holt. That Dateline episode is supposed to air in late August / early September, 2025.

**California Rule Of Court 7.955(b)(8) The time and labor required.**

54.    As of the time of the authoring of this instant Declaration I have at least 67.8 hours of time expended in this case.

**California Rule Of Court 7.955(b)(5) The time limitations or constraints imposed by the representative of the minor or person with a disability or by the circumstances.**

55.    I did not suffer any time limitations or constraints imposed on me by representing the plaintiff in this action.

**California Rule Of Court 7.955(b)(11) The likelihood, if apparent to the representative of the minor or person with a disability when the representation agreement was made, that the attorney's acceptance of the particular employment would preclude other employment.**

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

13

56.    It did not appear to me when the representation agreement in this case was made that my acceptance of representation of the minor plaintiff in this case would preclude other employment.

suffer any time limitations or constraints imposed on me by representing the plaintiff in this action.

**California Rule Of Court 7.955(b)(12) Whether the fee is fixed, hourly, or contingent.**

57.    As shown above, I represent the minor plaintiff in this case on a contingency basis. I have a written contingency fee agreement for my representation of minor plaintiff E.J.D. in this case.

58.    That contingency fee agreement calls for Attorney's Fees in the amount of 40% of the gross settlement, plus my out-of-pocket costs.

59.    However, in a minor's compromise case, the District Court usually will only allow a 25% fee plus costs for Attorney's Fees. The 40% was only to apply if the case went on until after minor plaintiff E.J.D. reached 18 years of age, which is December 10, 2025.

**California Rule Of Court 7.955(b)(13), If the fee is contingent:**

**(A) The risk of loss borne by the attorney.**

60.    When I took on this case, I believed that I had a more likely than not chance of prevailing in this case.

61.    However, in many cases I put hundreds of hours and thousands of

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

dollars into the case, and get nothing at all.

62.    Recently I have had to file motions in the United States District Court for the Central District of California to be relieved as counsel of record several case even though I had put hundreds of hours into these cases and will not receive any money at all in those cases[4].

63.    In other contingency cases, I have also suffered defense verdicts or have had to settle cases for such small amounts that I probably made less than minimum wage for my representation for the plaintiffs in those cases.

64.    Accordingly, in contingency cases, plaintiff's lawyer sometimes win and sometimes lose. The fact that this case settled at an early stage of this litigation should not mean that I should not be entitled to a 25% fee in this case.

### (B) The amount of costs advanced by the attorney.

65.    The total costs to date on this case are $3,645.60; $3,000.00 for the Mediation, $405.00 for the filing fee, $239.70 for service of the Summons and Complaint in this case, and $0.90 for postage.

---

[4] *Beshoy Mansor v. County of Riverside,* United States District Court for the Central District of California Case Number 5:23-cv-00486-KK-MAA; *Gilbert Noriega v. County of San Bernardino*, United States District Court for the Central District of California Case Number 5:24-cv-00170 JAK-DTBx; *Deanna Bonds v. County of San Bernardino*, United States District Court for the Central District of California Case Number 5:23-cv-01395-KK-SHK; *Karla Jenett Moore*, United States District Court for the Central District of California Case Number 5:21-CV-01154-JGB-KK. I also have two more cases in the Central District of California that I am going to have to move the court to withdraw on.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

**(C) The delay in payment of fees and reimbursement of costs paid by the attorney.**

66.    I entered into the agreement to represent the minor plaintiff on May 12, 2023. I have not received any payment at all in this case to date, including any payment or reimbursement for my expenses and costs expended by me.

**California Rule Of Court 7.955(b)(10). The relative sophistication of the attorney and the representative of the minor or person with a disability.**

67.    Plaintiff Leo Kenneth Davis is an educated man who I have had many discussions with, and who understands the facts involved in this case, the risks of proceeding to trial in this case, and the amounts of money agreed upon between the parties for the proposed settlement in this case.

68.    Plaintiff Leo Kenneth Davis has also wisely requested that his son, minor plaintiff E.J.D. be doled out his money in this case over time by way of the annuity proposed in this case, as shown in his separately filed Declaration in this case in Support of this instant Motion for the Compromise for the Settlement of his son's claim in this case.

**California Rule Of Court 7.955(b)(2). The amount of the fee in proportion to the value of the services performed.**

69.    I believe that my reputation in the community and track record[5] for

---

[5] My sample case list can be found at California Police Misconduct Lawsuits, Awards & Settlements .

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

winning Section 1983 cases resulted in a $395,000.00 case settlement for a minor plaintiff who suffered no fractured or broken bones, and only was taken to the hospital immediately after the subject collision and needed no additional medical care, and who did not see a physician after he was taken to the hospital by the police immediately after he was pitted by a Manhattan Beach Police Department police car on April 23, 2023, was the reason that the City of Manhattan Beach agreed to settle this case for $395,000.00.

70.    As shown above, the total costs to date on this case advanced by me are $3,645.60; $3,000.00 for the Mediation, $405.00 for the filing fee, $239.70 for service of the Summons and Complaint in this case, and $0.90 for postage.

71.    As shown above, I am requesting a 25% of the total settlement amount of $395,000.00 Attorney's Fees and Costs in this case is $102,395.60, leaving minor plaintiff E.J.D. with a net recovery of $292,604.40.

72.    In addition to the above and foregoing, minor plaintiff E.J.D.'s father and guardian ad litem in this case, Leo Davis, is desirous of having his son receive his case settlement proceeds by way of payments over time pursuant to the annuity shown below.

73.    Guardian ad litem Leo Davis has also selected an annuity for his minor son plaintiff E.J.D. that has a purchase price of $292,604.40 and provide payments to minor plaintiff E.J.D. as follows:

**Guaranteed Lump Sums:**

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

$75,000.00 payable on 12/10/2027 (Age 20)

$150,000.00 payable on 12/10/2032 (Age 25)

$199,437.52 payable on 12/10/2037 (Age 30)

73.    The total payouts to minor plaintiff E.J.D. under this annuity proposal are $424,437.52. See, attached Exhibit "A", a true and correct copy of the Annuity Proposal from MetLife Assignment Company, Inc.

74.    Pursuant to this arrangement for the settlement by the defendant City of Manhattan Beach that will cost the City a total of $395,000.00, the total settlement amount will be the $424,437.52 plus my attorney's fees of $98,750.00 and case costs of $3,645.60, the total settlement amount will be $526,833.12 to be paid out over the time periods set forth in attached Exhibit "A", with the final payment of $199,437.52 being made to minor plaintiff E.J.D. on December 10, 2037.

75.    Accordingly, the parties propose a total settlement amount of $526,833.12, that will cost defendant City of Manhattan Beach a total settlement amount of $395,000.00.

76.    Accordingly, plaintiffs pray that an order issue out of this Honorable Court, approving this instant Motion for approval of the minor's compromise in this case.

77.    I declare under penalty of perjury under the laws of the United States of America that the above and foregoing is true and correct.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFF E.J.D.

18

This the 12th day of August, 2025 at Newport Beach, California.

___/s/__ *Jerry L. Steering*_____

JERRY L. STEERING, ATTORNEY FOR
PLAINTIFF LEO KENNETH DAVIS, AS
GUARDIAN AD LITEM FOR HIS MINOR SON
E.J.D.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "A"

# Minor's Compromise Addendum For
# Minor Plaintiff E.J.D.

**$292,604.40** is to be used, with the court's permission, to purchase an annuity, in which MetLife Assignment Company, Inc. will provide for the following Periodic Payments to be made by Metropolitan Tower Life Insurance Company, rated A+XV by A.M. Best. The details of the periodic payments of which will be set forth in section (a), herein below. All sums constitute damages on account of personal injuries arising from an occurrence within the meaning of Section 104(a)(2).

    a)  The periodic payment schedule for Minor Plaintiff E.J.D.  as follows

<u>**Guaranteed Lump Sums:**</u>
$75,000.00 payable on 12/10/2027
$150,000.00 payable on 12/10/2032
$199,437.52 payable on 12/10/2037

Claimant acknowledges and agrees that the Defendant and/or the Insurer may make "qualified assignment" within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendant's and/or the Insurer's liability to make the periodic payments required herein.  Any such assignment, if made, shall be accepted by the Claimant without right of rejection and shall completely release and discharge the Defendant and the Insurer from such obligations hereunder as are assigned to MetLife Assignment Company, Inc. (hereinafter "Assignee"). The Claimant recognizes that, in the event of such an assignment, the Assignee shall be their sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the Defendant and the Insurer shall thereupon become final, irrevocable and absolute.

Exhibit A